**WO**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

Nathan Sterling Mason,

              Plaintiff,

v.

Charles Ryan, et al.,

              Defendants.

No.  CV 19-04987-PHX-DGC (MHB)

**ORDER**

On August 19, 2019, Plaintiff Nathan Sterling Mason, who is confined in the Arizona State Prison Complex-Lewis (ASPC-Lewis) in Buckeye, Arizona, filed a pro se civil rights Complaint pursuant to 42 U.S.C. § 1983, an Application to Proceed In Forma Pauperis, and a Motion for Preliminary Injunction (Doc. 4).

On August 26, 2019, Plaintiff filed two additional Motions for Preliminary Injunction (Docs. 7 and 8), a Notice to the Court Regarding Application to Proceed In Forma Pauperis, a "First Amended Complaint" containing bracketed text and text that had been struck through, and a second Application to Proceed In Forma Pauperis. On September 9, 2019, he filed a "Motion to File Attached Motion Under Seal for Plaintiff[']s Protection" (Doc. 13), lodged under seal Plaintiff's "Supplement Evidence to Support Motions for Order of Protection and Other Preliminary Relief Requested on an Expedited/Emergency Basis" (Doc. 14); and filed two documents containing supplemental evidence in support of his motions for injunctive relief.

. . . .

In a September 11, 2019 Order, the Court granted Plaintiff's first Application to Proceed In Forma Pauperis, denied as duplicative his second Application to Proceed, and directed the Clerk of Court to change the docket to reflect that the August 26 "First Amended Complaint" was a "Notice of Filing of First Amended Complaint." The Court gave Plaintiff thirty days to file a clean version of the amended complaint that did not contain brackets and strike-throughs.

On September 23, 2019, Plaintiff filed a First Amended Complaint (Doc. 19) and another document containing supplemental evidence. On October 7, 2019, he filed a Motion to File Notice to Court Under Seal (Doc. 21) and lodged under seal a Notice to the Court (Doc. 22). On October 17, 2019, Plaintiff filed a Request for Expedited Ruling on Requests for Relief (Doc. 23). On November 4, 2019, he filed a Notice of Change of Address and a Motion to File Motion Under Seal (Doc. 25), lodged under seal his "Supplement Facts to Pending Motions for Relief" (Doc. 26), and filed a Request for Court Order (Doc. 27).

The Court will (1) order Defendant Ryan to answer Count One in his individual capacity; (2) substitute David Shinn for Defendant Ryan in his official capacity; (3) order David Shinn to answer Count One in his official capacity; (4) order Defendants Ryan, Taylor, Lowe, Williams, Abbl, Evans, Kila, Vargas, and Hernandez to answer limited portions of Count Three in their individual capacities; (5) order Defendant Ende to answer Count Four in his individual capacity; and (6) dismiss the remaining claims and Defendants without prejudice. The Court will order David Shinn to respond to the August 19 Motion for Preliminary Injunction and will deny the August 26 Motions for Preliminary Injunction. In addition, the Court will grant the three motions to file under seal and will direct the Clerk of Court to file under seal the three documents that were lodged under seal. Finally, the Court will deny the Request for Expedited Ruling and Request for Court Order.

In an effort to expediate consideration of this matter, the Court will direct the United States Marshal to immediately serve Defendant Shinn and will direct Defendant Shinn to respond to the August 19 Motion for Preliminary Injunction within ten days of service.

## I. Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. *Id.* at 681.

But as the United States Court of Appeals for the Ninth Circuit has instructed, courts must "continue to construe *pro se* filings liberally." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). A "complaint [filed by a pro se prisoner] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).

. . . .

## II. First Amended Complaint

In his eight-count First Amended Complaint, Plaintiff sues the following Defendants: the State of Arizona; Arizona Governor Douglas Ducey; Assistant Arizona Attorney General Michelle Lombino; former Arizona Department of Corrections (ADC) Director Charles Ryan; Deputy Wardens Weiss and Ronald Abbl; Assistant Deputy Warden Kaufman; Security Operation Administrator Ronald Lee; Captain Whiting; Lieutenant Randall Lowe; Corrections Officer (CO) IVs McCain and Mary-Ellen Ohshita; CO IIIs Wade, Jaymond Williams, Vance, and Greg Cortez; CO IIs Evans, Kila, Vargas, Garcia, and Hernandez; Special Security Unit Officer Taylor; ADC Employees Doe 1-100; the Buckeye City Fire Marshal; Centurion; and Centurion Nurse Practitioner Ende. Plaintiff sues all of the Defendants in their individual and official capacities, except for Defendants State of Arizona and Centurion, which are sued in their official capacities only.

In Counts One, Two, Four, and Eight, Plaintiff alleges violations of his Eighth Amendment rights regarding his medical care (Counts One and Four) and his conditions of confinement (Counts Two and Eight). In Count Three, he alleges First Amendment retaliation claims. In Count Five, he contends a state statute violates his First, Fourth, Fifth, Eighth, and Fourteenth Amendment rights. In Counts Six and Seven, he alleges he was deprived of his liberty (Count Six) and his property (Count Seven) in violation of the Fourteenth Amendment. In his Request for Relief, Plaintiff seeks declaratory and injunctive relief and monetary damages.

## III. Discussion of First Amended Complaint

Although pro se pleadings are liberally construed, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), conclusory and vague allegations will not support a cause of action. *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). Further, a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled. *Id.*

A suit against a defendant in his or her *official* capacity represents only another way of pleading an action against the entity that employs the defendant. *Kentucky v. Graham*,

473 U.S. 159, 165 (1985). That is, the real party in interest is not the named defendant, but the entity that employs the defendant. *Id.* To bring a claim against an individual in his official capacity, a plaintiff must show that the constitutional deprivation resulted from the entity's policy, custom, or practice. *Id.*; *Monell*, 436 U.S. at 694.

A suit against a defendant in his or her *individual* capacity seeks to impose personal liability upon the official. *Kentucky v. Graham*, 473 U.S. at 165-66. Plaintiffs must allege that they suffered a specific injury as a result of specific conduct of a defendant and show an affirmative link between the injury and the conduct of that defendant. *See Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976). "A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998).

## A.     Official Capacity Claims

### 1.     Defendant Ende

An official capacity claim against Defendant Ende is duplicative because Plaintiff is suing Defendant Centurion. Thus, the Court will dismiss as duplicative Plaintiff's official-capacity claim against Defendant Ende.

### 2.     Defendant Buckeye City Fire Marshal

Plaintiff has failed to show that he suffered any constitutional deprivation as a result of a specific policy, practice, or custom of Buckeye City or the Buckeye City Fire Department, the entities that employ Defendant Buckeye City Fire Marshal. Thus, the Court will dismiss Plaintiff's official capacity claim against Defendant Buckeye City Fire Marshal.

### 3.     Arizona Employees

"[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citation omitted).

. . . .

Plaintiff cannot maintain a lawsuit for damages against Arizona employees in their official capacities. *See Hafer v. Melo*, 502 U.S. 21, 27 (1991) ("State officials sued for damages in their official capacity are not 'persons' for purposes of the suit because they assume the identity of the government that employs them."); *see also Gilbreath v. Cutter Biological, Inc.*, 931 F.2d 1320, 1327 (9th Cir. 1991). Thus, the Court will dismiss Plaintiff's official capacity claims for damages against Defendants who are Arizona employees.

Plaintiff may maintain a lawsuit against Arizona employees in their official capacities for prospective declaratory and injunctive relief. *See Coalition to Defend Affirmative Action v. Brown*, 674 F.3d 1128, 1134 (9th Cir. 2012). However, "in an official-capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law." *Kentucky v. Graham*, 473 U.S. at 166; *see also Los Angeles County v. Humphries*, 562 U.S. 29, 39 (2010) (the "'policy or custom' requirement [in *Monell*] applies in § 1983 cases irrespective of whether the relief sought is monetary or prospective."). A plaintiff must allege, as a matter of law, that the policy or custom caused him to suffer constitutional injury. *Sadoski v. Mosley*, 435 F.3d 1076, 1080 (9th Cir. 2006).

Except as specifically discussed below, Plaintiff's allegations against Arizona employees fail to plausibly show that any policy, practice, or custom of any state entity has resulted in his alleged injuries. Thus, the Court will dismiss without prejudice Plaintiff's official capacity claims, except those specifically identified below, against Defendants who are Arizona employees.

**B.    Eighth Amendment Medical Care Claims – Counts One and Four**

**1.    Count One**

In Count One, Plaintiff contends Defendant Ryan breached his duty to provide adequate healthcare by delegating his duty to Defendant Centurion, which is "incompetent [and] profit driven" and "has a long history of providing inadequate healthcare." He asserts Defendant Ryan knew of the risk to Plaintiff's health and disregarded it so he could "reap financial gain by rec[ei]ving kickback checks/incentives" from Defendant Centurion.

Plaintiff contends that Defendant Ryan has continued to delegate his duty to profit-driven companies for his own personal financial gain, despite years of "proven deficiencies" when using "profit-driven companies." Plaintiff asserts Defendant Ryan has "adopted polic[ie]s" and instructed Defendant Centurion to restrict care and medications prescribed by specialists. He claims that "[a]t [Defendant] Ryan[']s direction[,] thr[ough] his adopted polic[ie]s," Defendant Ryan has failed to treat Plaintiff's chronic pain as a serious medical need. Plaintiff claims this caused him pain and suffering, increased pain, "worsening symptomology," worsening of his degenerative spine condition and hypertension, a loss of mobility and quality of life, a life-long disability, chronic sleep deprivation, anxiety, depression, emotional distress, and "severe retaliation."

Liberally construed, Plaintiff has stated an Eighth Amendment claim against Defendant Ryan in his individual capacity for damages and in his official capacity for prospective declaratory and injunctive relief. The Court will require Defendant Ryan to answer Count One in his individual capacity. On September 13, 2019, Defendant Ryan stepped down as the ADC Director. The new Director is David Shinn. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court will substitute Director Shinn for Defendant Ryan in his official capacity only. *See* Fed. R. Civ. P. 25(d) (permitting the court to order substitution of a public officer who is a party in an official capacity when the party ceases to hold office while the action is pending). The Court will require David Shinn to answer the official capacity claim in Count One.

### 2. Count Four

In Count Four, Plaintiff contends Defendant Ende, who works for Defendant Centurion, initially refused to see him and said he could not do anything for Plaintiff. However, Plaintiff saw Defendant Ende on July 2, 2019, and explained that he has herniated/bulging cervical discs; spinal stenosis; radiculopathy; levoscoliosis; debilitating and chronic pain in his neck, left shoulder/arm, and upper back; and cannot sit, sleep, read, write, or "live life" without excruciating pain. He told Defendant Ende that ibuprofen was ineffective and that a specialist had prescribed Ultram. Plaintiff claims Defendant Ende

said, "no court order stated he had to give [Plaintiff] different pain meds"; offered to prescribe Tylenol in addition to ibuprofen; and refused to order any diagnostic testing. Plaintiff contends Defendant Ende has subsequently refused to see Plaintiff at all and is intentionally inflicting pain on Plaintiff by denying him the prescription prescribed by the specialist.

### a. Defendant Ende

Liberally construed, Plaintiff has stated a claim against Defendant Ende in his individual capacity. The Court will require Defendant Ende to answer Count Four in his individual capacity.

### b. Defendant Centurion

To state a claim under § 1983 against a private entity performing a traditional public function, such as providing medical care for prisoners, a plaintiff must allege facts to support that his constitutional rights were violated as a result of a policy, decision, or custom promulgated or endorsed by the private entity. *See Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138-39 (9th Cir. 2012); *Buckner v. Toro*, 116 F.3d 450, 452 (11th Cir. 1997). A plaintiff must allege the specific policy or custom and how it violated his constitutional rights. A private entity is not liable merely because it employs persons who allegedly violated a plaintiff's constitutional rights. *See Tsao*, 698 F.3d at 1138-39; *Buckner*, 116 F.3d at 452.

Plaintiff has not alleged that the conduct described in Count Four was the result of a specific policy or custom of Defendant Centurion, as opposed to decisions by Defendant Ende. Thus, the Court will dismiss without prejudice Defendant Centurion.

### C. Eighth Amendment Conditions of Confinement Claims – Counts Two and Eight

To state an Eighth Amendment conditions-of-confinement claim, plaintiffs must meet a two-part test. "First, the alleged constitutional deprivation must be, objectively, sufficiently serious" such that the "official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834

(1994) (internal quotations omitted).  Second, the prison official must have a "sufficiently culpable state of mind," i.e., he must act with "deliberate indifference to inmate health or safety." *Id.* (internal quotations omitted).  Deliberate indifference is a higher standard than negligence or lack of ordinary due care for the prisoner's safety. *Id.* at 835.  In defining "deliberate indifference" in this context, the Supreme Court has imposed a subjective test: "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and* he must also draw the inference." *Id.* at 837 (emphasis added).

### 1.    Count Two

In Count Two, Plaintiff alleges Defendant Ryan has failed to provide adequate cooling because he chose to use swamp coolers to cool the cells and dorms where Plaintiff resides.  Plaintiff contends Defendant Ryan knows of the risk to Plaintiff's health and safety from using swamp coolers, but has disregarded that risk.

Plaintiff claims using swamp coolers violates the professional standards for correctional facilities, which indicate that Arizona's state prisons should have air conditioning, and alleges administrative areas, CO III offices, and control bubbles at the Arizona prisons are cooled by air conditioning, while he "bake[s] all day long."  He alleges swamp coolers are incapable of adequately cooling the living areas, cannot compete with the Arizona sun "baking the concrete walls all day long," are not maintained, leak, and do not work in high humidity, such as during Arizona's summer monsoon season.  He claims "temperature checks show the temperature in excess of 90-100° during the summer months" and the heat index, when using the swamp coolers and taking humidity into account, is "well over 100°."  He claims the excessive heat exacerbates his hypertension, he is at an increased risk of heat-related illnesses because he has hypertension, and he has experienced depression, fatigue, dehydration, chronic respiratory sickness, sleep deprivation, emotional distress, heat-related illness, cervical lymphadenopathy, a generally poor quality of life, and a loss of property when the swamp cooler leaked on his television.  . . . .

Plaintiff's allegation that Defendant Ryan knew of a risk to Plaintiff's health and safety from using swamp coolers, but disregarded that risk, is too vague and conclusory to state a claim. Plaintiff does not identify how Defendant Ryan became aware of an excessive risk[1] to Plaintiff's health and safety and what he did that would constitute disregard of that risk. *See Farmer*, 511 U.S. at 837. Plaintiff does not allege he notified Defendant Ryan of the risk to his safety and, if he did, what information he provided to Defendant Ryan; what actions, if any, he requested Defendant Ryan take, such as providing additional fans or moving Plaintiff to a different facility; what response, if any, Defendant Ryan provided; and how this rose to the level of deliberate indifference. Absent more, Plaintiff's allegations are insufficient to state a claim against Defendant Ryan. Thus, the Court will dismiss without prejudice Count Two.

## 2.     Count Eight

In Count Eight, Plaintiff alleges Defendant Ryan, unknown Doe Defendants who are the current deputy warden and assistant deputy warden at ASPC-Lewis's Buckley Unit, and a non-party complex warden at ASPC-Lewis, "promote and create unconstitutional conditions of confinement" in violation of Plaintiff's Eighth Amendment rights. He claims Defendant Ryan and ASPC-Lewis's administration "blatantly ignore" Arizona law and fire code safety and "engage in a campaign of harassment and unconstitutional conditions of confinement in direct retaliation for the media exposing all of the corruption." Plaintiff contends all cell doors are padlocked and this, "coupled with severe short staff or staff laziness," violates State law and fire codes, places him at risk of serious injury or death if there is a fire or an emergency, and has led to frequently missed showers. He also claims that after the media exposed these conditions, "[the Tactical Support Unit (TSU)] was called multiple times daily" to harass and intimidate inmates and break or steal property.

. . . .

---

[1] *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) ("Because routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation.") (internal quotations and citations omitted).

In addition, Plaintiff contends he was placed in a cell without a mattress for 48 hours and received "disciplinary" when he "refused to subject [him]self to it for a [third] night." He asserts he is housed in a pod where inmates kick the doors and scream all night, break cable outlets, cut the power, and set fires, but corrections officers ignore the inmates. Plaintiff contends Defendant Ryan and Doe Defendants who are administrators instruct inmates to "police your own," which results in frequent assaults, robberies, and thefts. He claims he has the ability to e-file once every two weeks; corrections officers "always" deny requests to call a supervisor; and the Buckley Unit receives different food than other units. Plaintiff alleges he is subjected to a filthy environment because his cell, pod, and building are plagued with rats, roaches, mice, ants, and scorpions; he is intentionally not provided with an opportunity to clean; and Defendant Ryan is aware, through a court ruling in another case, that the cleaning supplies are grossly inadequate. Finally, Plaintiff contends Defendant Buckeye City Fire Marshal "allows" Defendant Ryan to violate the fire code.

As to Plaintiff's claims regarding padlocking cells, harassment in retaliation for exposing issues to the medical, and instructions to "police your own," Plaintiff has simply made vague and conclusory allegations against groups of Defendants, without any factual specificity as to what any particular Defendant did or failed to do. This is insufficient. *See Marcilis v. Township of Redford*, 693 F.3d 589, 596 (6th Cir. 2012) (upholding dismissal of *Bivens* complaint that referred to all defendants "generally and categorically" because the plaintiff had failed to "'allege, with particularity, facts that demonstrate what *each* defendant did to violate the asserted constitutional right.'" (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008))); *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) ("Given the complaint's use of either the collective term 'Defendants' or a list of the defendants named individually but with no distinction as to what acts are attributable to whom, it is impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed."). Thus, the Court will dismiss this portion of Count Eight.

. . . .

Regarding Plaintiff's allegations about being placed in a cell without a mattress for 48 hours, being disciplined when he refused to be deprived of a mattress for a third night, being subjected to loud and unruly inmates, e-filing limitations, denials of requests to contact supervisors, and exposure to rodents, ants, and scorpions, Plaintiff has failed to link his claims to the conduct of any specific defendant. Therefore, the Court will dismiss this portion of Count Eight.

Although Plaintiff claims Defendant Ryan is aware, through other litigation, that the provided cleaning supplies are grossly inadequate, Plaintiff does not allege what actions, if any, he requested Defendant Ryan take, such as providing more or different cleaning supplies; what response, if any, Defendant Ryan provided; and how this rose to the level of deliberate indifference. Absent more, Plaintiff's allegations against Defendant Ryan are too vague and conclusory to state a claim, and the Court will dismiss this portion of Count Eight.

Regarding Plaintiff's allegation that Defendant Buckeye City Fire Marshal "allows" Defendant Ryan to violate the fire code, Plaintiff does not indicate when Defendant Buckeye City Fire Marshal inspected the facility, whether Defendant Buckeye City Fire Marshal discovered fire code violations, and, if he did, what actions, if any, he took to require Defendant Ryan to remedy those violations. Thus, the Court will dismiss this portion of Count Eight.

**D. Count Three**

A viable claim of First Amendment retaliation contains five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights (or that the inmate suffered more than minimal harm) and (5) did not reasonably advance a legitimate correctional goal. *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005); *see also Hines v. Gomez*, 108 F.3d 265, 267 (9th Cir. 1997) (retaliation claims requires an inmate to show (1) that the prison official acted in retaliation for the exercise of a constitutionally protected right, and (2) that the action

"advanced no legitimate penological interest").  The plaintiff has the burden of demonstrating that his exercise of his First Amendment rights was a substantial or motivating factor behind the defendants' conduct.  *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989).

In Count Three, Plaintiff alleges he has been, and continues to be, subjected to retaliation, in violation of the First Amendment, "for addressing grievances of conditions of [his] confinement by litigating against [Defendant] Ryan in District Court."  He claims he had critical evidence seized, lost good time credits and had his release date extended, lost contact visits and telephone privileges, was assaulted, likely contracted hepatitis C during an assault, was subjected to stricter conditions of confinement because he was unjustly classified to a higher custody level, had his medical records falsified, was disciplined, is being mentally tortured, lost personal property, and constantly fears assaults from inmates and prison staff.

Plaintiff alleges his lawsuit began in March 2017, he has been retaliated against since then, and the following events, "combined and/or alone," constitute retaliation for litigating against ADC.

### 1.  Defendants Lombino and Wade

Plaintiff alleges that during a legal call with Defendant Lombino, in which they were attempting to confer regarding a discovery dispute in his pending lawsuit, Defendant Lombino instructed Defendant Wade to "issue [Plaintiff] disciplinary."  It is unclear whether Defendant Wade complied with Defendant Lombino's instruction and, if so, whether Plaintiff suffered any sanctions.  Absent more, Plaintiff's allegations are insufficient to permit a conclusion that Plaintiff's First Amendment rights were chilled or that he suffered more than minimal harm.  Thus, the Court will dismiss this portion of Count Three.

. . . .

. . . .

1

### 2. Seizure of Evidence and Legal Mail

Plaintiff contends that after he produced evidence during discovery in his lawsuit, Defendant Taylor "was instructed" in March 2018 to seize the evidence Plaintiff had produced and to "read, search and steal [Plaintiff's] legal mail." He asserts Defendant Taylor "knew he was violating [Plaintiff's] rights and chose to do so anyways." Plaintiff claims the order to seize the materials "involved multiple Doe Defendants," but began with Defendant Ryan, who, "thr[ough] his counsel, went thr[ough] [the] A.D.C. Liaison to [the] A.G.['s] Office, [Defendant] Lee, . . . who ordered [Defendant] Weiss, to [Defendant] Kaufman, to [Defendant] McCain, to [Defendant] Taylor." Plaintiff contends these Defendants knew the order to seize the materials violated ADC policy and Plaintiff's rights, but chose to carry out the order to "damage [Plaintiff's] case against their boss" and to intimidate and harass Plaintiff and cause him "fear of continuing litigation."

Liberally construed, Plaintiff has stated a retaliation claim against Defendant Taylor; the Court will require Defendant Taylor to answer this portion of Count Three.

Plaintiff's allegation that the order to seize the materials involved "multiple Doe Defendants" and Defendants Ryan, Lee, Weiss, Kaufman, and McCain is nothing more than an insufficiently vague and conclusory allegation against a group of Defendants, without any specific information about what any particular Defendant did. Thus, the Court will dismiss without prejudice this portion of the Court Three against Defendants Ryan, Lee, Weiss, Kaufman, McCain, and the Doe Defendants.

### 3. Defendant Whiting's Authorization of Searches of Plaintiff's Bodily Fluids

Plaintiff claims that during his lawsuit, Defendant Whiting authorized "dozens of targeted searches of [Plaintiff's] bodily fluids just to harass [Plaintiff]." Although these searches may have occurred during Plaintiff's lawsuit, Plaintiff has alleged nothing to suggest that his exercise of his First Amendment rights was a substantial or motivating factor behind Defendant Whiting's conduct. Thus, the Court will dismiss without prejudice this portion of Count Three.

TERMPSREF

### 4. Defendant Lowe's Targeting of Plaintiff to be Strip Searched

Plaintiff contends Defendant Lowe targeted him in May 2019 to be strip searched by four corrections officers, "just to harass [Plaintiff]." He alleges that prior to the strip search, Defendant Lowe told Plaintiff, "go ahead and sue me, you see how it[']s worked so far." Liberally construed, Plaintiff has stated a retaliation claim against Defendant Lowe. The Court will require Defendant Lowe to answer this portion of Count Three.

### 5. Defendant Williams – Max Packet

Plaintiff alleges that in July 2019, Defendant Williams "processed a Max Packet," reclassified Plaintiff to a level-four yard, and took away months of good time credit. Plaintiff claims Defendant Williams had no justification for processing a Max Packet. Plaintiff contends his alleged offenses "did not fall into any category for max custody," so, in an effort to ensure Plaintiff was reclassified and moved, Defendant Williams "falsely placed [Plaintiff's] classification under 'repeatedly disruptive and dangerous behavior.'"

"[A] state prisoner seeking injunctive relief against the denial or revocation of good-time credits must proceed in habeas corpus, and not under § 1983." *Nonnette v. Small*, 316 F.3d 872, 875 (9th Cir. 2002). In addition, if a judgment for Plaintiff regarding the denial of due process in a prison disciplinary proceeding would invalidate or imply the invalidity of the deprivation of good-time credits, the claim is barred under *Heck v. Humphrey*, 512 U.S. 477 (1994), unless Plaintiff can show that the disciplinary conviction has been previously invalidated. *See Edwards v. Balisok*, 520 U.S. 641, 646-48 (1997); *Heck*, 512 U.S. at 486-87; *Nonnette*, 316 F.3d at 875. *See also Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) ("[A] state prisoner's § 1983 action is barred (absent prior invalidation)–no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)–*if* success in that action would necessarily demonstrate the invalidity of confinement or its duration.").

Plaintiff's claim, if decided in his favor, would either invalidate or imply the invalidity of the deprivation of his good-time credits. Because Plaintiff has not demonstrated that his prison disciplinary proceedings have been reversed, expunged,

declared invalid, or called into question by a federal court's issuance of a writ of habeas corpus, his claim is barred by *Heck*. Thus, the Court will dismiss without prejudice this portion of Count Three.

### 6. Defendant Abbl's Order for Two Urinalyses Within 36 Hours

Plaintiff claims that in May 2019, Defendant Abbl ordered him to undergo two urinalyses within 36 hours after Plaintiff's first urinalysis tested positive for opiate painkillers. He contends Defendant Abbl "targeted' him again within 36 hours to ensure Plaintiff received "multiple infractions and classification points." Plaintiff alleges that prior to Plaintiff's July 15, 2019 administrative appeal, Defendant Abbl repeatedly instructed Plaintiff to "just go through the disciplinary process and he would dismiss the [second] infraction on appeal." Plaintiff claims that because of these assurances, he did not defend himself at all during the disciplinary proceeding and was convicted.

Plaintiff allegations do not support a conclusion that his exercise of his First Amendment rights was a substantial or motivating factor behind Defendant Abbl's conduct. Thus, the Court will dismiss without prejudice this portion of Count Three.

### 7. Placement in Top Bunk

Plaintiff asserts that when he arrived in the Barchey Unit in February 2019, he was placed in a top bunk, without an adequate ladder, two months after having spinal surgery and despite having a medical waiver for a lower bunk. He claims the movement officer said, "You like to sue, huh? Go ahead." Plaintiff contends he filed a motion in court and was immediately moved to a cubicle.

Plaintiff has failed to link this allegation to the conduct of any specific Defendant. Thus, the Court will dismiss without prejudice this portion of Count Three.

### 8. Pod Search

Plaintiff contends that the day he was moved to the cubicle, Defendant Abbl ordered the pod searched "to make it appear to the inmate population that [Plaintiff had] snitched on the pod." Plaintiff contends he was assaulted because of this.

. . . .

Plaintiff's allegation is speculative.  In addition, Plaintiff does not allege that the exercise of his First Amendment rights was a substantial or motivating factor behind Defendant Abbl's conduct or that there was no valid penological justification for it.  Thus, the Court will dismiss without prejudice this portion of Count Three.

### 9.    Repeated Urinalyses

Plaintiff alleges that although he was never subjected to repeated urinalyses prior to his lawsuit against Defendant Ryan, Plaintiff subsequently has been targeted for urinalyses "countless times."  He claims Department Order 709 allows ADC to conduct random urinalyses "in the form of 10% of the population to be tested once a month."  Plaintiff contends his "retaliatory drug testing" was "documented random," but, statistically, he "should not be tested more than once every 10 months."

Plaintiff has failed to link this allegation to the conduct of any specific Defendant. Thus, the Court will dismiss without prejudice this portion of Count Three.

### 10.    Harassment and Threats

Plaintiff claims Defendant Whiting called Plaintiff into his office to harass him about his lawsuit and stated, "If you keep kicking up dust, we can just throw you back in [the general population]."  He also asserts Defendant Ohshita made "several threats" while delivering e-files, stating that continuing litigation will result in continued disruption of Plaintiff's life in prison.

Plaintiff's allegations do not state a claim for a constitutional violation.  *See Gaut v. Sunn*, 810 F.2d 923, 925 (9th Cir. 1987) (defendants' threats of bodily harm to convince plaintiff not to pursue legal redress were insufficient to state a claim under § 1983; "it trivializes the eighth amendment to believe a threat constitutes a constitutional wrong"); *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987) ("'[v]erbal harassment or abuse . . . is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983'" (quoting *Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979))); *see also McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983) ("mere threatening language and gestures . . . do not, even if true, amount to constitutional violations" (quoting *Coyle v. Hughes*, 436 F. Supp. 591, 593

(W.D. Okla. 1977))).  Thus, the Court will dismiss without prejudice this portion of Count Three.

### 11.    Campaign of Retaliation by Doe Defendants

Plaintiff alleges "other multiple Doe Defendants are involved in this campaign of retaliation, the extent of which is not yet fully known."   Plaintiff's allegations are vague and conclusory and lack any specificity as to what any individual Defendant did or failed to do.  Thus, the Court will dismiss without prejudice this portion of Count Three.

### 12.    Defendant Williams's Conduct After Plaintiff Requested to Contact his Attorney

Plaintiff asserts he asked Defendant Williams on August 6, 2019, to contact his attorney in his pending lawsuit, who was engaged in active settlement negotiations.  He contends Defendant Williams became "extremely violent" when Plaintiff explained he needed to ensure his attorney had his mother's banking information for the settlement funds.  Specifically, Plaintiff alleges Defendant Williams screamed, "you think I give a fuck about you getting that kind of money[,] dog?"  Plaintiff contends he calmly asked Defendant Williams why he cared if Plaintiff was getting a settlement, and Defendant Williams screamed, "you want to see disrespect[,] motherfucker?"; threw his chair against his desk; quickly approached Plaintiff; opened his office door and pushed Plaintiff to the entrance; and put his face less than an inch from Plaintiff's face and yelled, "Get out of my office[,] bitch, you[']ll never talk to your lawyer again."  Plaintiff asserts he tried to de-escalate the situation by telling Defendant Williams that the lawsuit had nothing to do with him, but Defendant Williams reiterated that Plaintiff should get out of his office and slammed the door into Plaintiff's back and the upper shoulder where Plaintiff had received spinal surgery.  Plaintiff contends Defendant Williams then "pushed his way into [Plaintiff's] face," picked up his radio, and said, "I guess you want another 5 years for assault."  Plaintiff claims he feared for his life and continues to be afraid of assaults, the planting of evidence, and new charges.  He alleges none of this would have happened if he had not sued ADC defendants.

Liberally construed, Plaintiff has stated a retaliation claim against Defendant Williams. The Court will require Defendant Williams to answer this portion of Count Three.

### 13. Post-Settlement Events

Plaintiff alleges that on August 14, 2019, he settled with one group of defendants in his lawsuit and Defendant Williams made Defendant Abbl aware of the settlement amount. Plaintiff claims he was called into Defendant Abbl's office and, while he was there, Defendant Abbl sent Defendants Kila, Vargas, and Does to Plaintiff's cell and told Plaintiff, "It[']s a tit for tat, you got some money, now you spend it at Buckley." Plaintiff asserts that as part of the retaliation, Defendants Kila and Vargas either threw away or instructed inmates to steal Plaintiff's legal boxes, fan, pillows, headphone extension, towel, sheets, commissary items, and hygiene supplies.

Plaintiff claims that when he left Defendant Abbl's office, he was threatened with physical force to "walk directly to Buckley," where Defendant Evans placed Plaintiff in a cell "known to not have cable" and told Plaintiff, "I know, you[']r[e] not moving, D.W. wants to teach you who always wins." Plaintiff contends the cell did not have a mattress and he did not receive one for two days, which caused him suffering because of his medical needs and spinal condition. He alleges he was sent to the Buckley Unit "because of the well[-]known staff corruption [and] easier ability to orchestrate further retaliation."

Notifying Defendant Abbl of Plaintiff's settlement amount does not constitute retaliation. Thus, the Court will dismiss without prejudice the portion of this claim against Defendant Williams. The Court will dismiss Plaintiff's claim against the Doe Defendants because Plaintiff does not allege these Defendants retaliated against him.

Liberally construed, Plaintiff has stated a retaliation claim against Defendants Abbl, Kila, Vargas, and Evans. The Court will require them to answer this portion of Count Three.

. . . .

. . . .

### 14.  Informal Grievance Being Given to Leaders of the Yard

Plaintiff contends he submitted an informal grievance to Defendant Vance in August 2018 exposing an inmate who had stolen Plaintiff's commissary items.  Plaintiff asserts that in March 2019, Defendant Vance's former clerk "had possession of a copy of the informal" and submitted it to the "leaders of the yard," which resulted in Plaintiff being assaulted.  Plaintiff claims Defendant Vance frequently expressed disgust when delivering e-filings from Plaintiff's lawsuit and said, "you lawyers get on my nerves."  Plaintiff contends "none of these things" would have happened to him if he had not filed suit and he has seriously considered dismissing his lawsuit to end these punishments.

Plaintiff does not allege anything to suggest Defendant Vance gave a copy of the informal grievance to his former clerk or that he did so because Plaintiff filed the grievance or filed his lawsuit.  Thus, the Court will dismiss without prejudice this portion of Count Three.

### 15.  Retaliation for Helping Another Inmate With Litigation

Plaintiff claims Defendant Williams was aware that Plaintiff was helping another inmate with litigation and, in July 2019, processed a "Max Custody Placement Packet" under false pretenses to ensure Plaintiff could not assist the inmate.

Plaintiff has failed to state a claim because he has not demonstrated that he was retaliated against for exercising a constitutional right.  An inmate has no First Amendment right to provide legal assistance to fellow inmates.  *Shaw v. Murphy*, 532 U.S. 223, 231 (2001).  Thus, the Court will dismiss this portion of Count Three.

### 16.  Delivery of E-Files

Plaintiff asserts that in September 2019, Defendant Cortez gave his clerk Plaintiff's e-files to deliver to Plaintiff.  Plaintiff contends "he has possession of them and gave them to A.D.C. Defendants."

Plaintiff's allegations are vague and conclusory and it is unclear how Plaintiff was retaliated against.  Simply delivering electronically filed public records to Plaintiff or to

others does not constitute retaliation. Thus, the Court will dismiss this portion of Count Three.

### 17. Assault

Plaintiff alleges that on September 7, 2019, Defendant Hernandez dragged Plaintiff to an area that was not equipped with inmate monitoring; said, "there[']s no cameras back here"; and, with Defendant Does, assaulted Plaintiff. Plaintiff contends he suffered bruising, a broken tooth, and severe and painful genital groping, while sarcastic remarks were made about him being the "lawyer kid."

Plaintiff's allegation against Defendant Does is vague and conclusory and fails to indicate what any particular individual did or failed to do. Thus, the Court will dismiss without prejudice Plaintiff's claim against Defendant Does.

Liberally construed, Plaintiff has stated either a retaliation or excessive force claim against Defendant Hernandez regarding the assault. The Court will require Defendant Hernandez to answer this portion of Count Three.

### E. Count Five

In Count Five, Plaintiff alleges Arizona Revised Statutes section 41-1604 violates his First, Fourth, Fifth, Eighth, and Fourteenth Amendment rights. He contends Defendants Ryan and Ducey "according to Supreme Court precedent," retain a non-delegable duty to provide Plaintiff constitutionally acceptable healthcare, but "Arizona[']s unconstitutional law allows them to delegate this duty to for[-] profit company[ie]s as a part of . . . prison profiteering practices so that they can reap financial gain thr[ough] inadequate care." Plaintiff asserts that if Arizona law complied with Supreme Court holdings, he would not be "a victim of inadequate care, or be deprived [of] adequate due process." Plaintiff asserts that "the current delegation just allows for the finger to be pointed" and that Defendant Ducey refuses to hold Defendant Ryan accountable.

The term "nondelegable duty" "'does not mean that an actor is not permitted to delegate [an] activity to an independent contractor.'" *Civil Rights Educ. & Enforcement Ctr. v. Hosp. Props. Trust*, 867 F.3d 1093, 1105 (9th Cir. 2017) (quoting *Restatement*

(Third) of Torts: Liability for Physical and Emotional Harm § 57 cmt. b (Am. Law Inst. 2012)). "Nondelegable duty is a tort concept associated with vicarious liability theories." *Id.* "[I]t means that an action 'will be vicariously liable for the contractor's tortious conduct in the course of carrying out the activity.'" *Id.* (quoting *Restatement (Third) of Torts: Liability for Physical and Emotional Harm* § 57 cmt. b); *see also West v. Atkins*, 487 U.S. 42, 56 (1988) ("Contracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody . . . ."); *Parsons v. Ryan*, 2018 WL 3239691, at *9 (D. Ariz. June 22, 2018) ("Defendants' contract with Corizon does not obviate their non-delegable duty to provide Plaintiffs with health care under state law."). Thus, the Court will dismiss Count Five.

### F.     Count Six

In Count Six, Plaintiff alleges he was deprived of his liberty in violation of the Fourteenth Amendment. He claims that in July 2019, he was "targeted" for two urinalyses within a 36-hour period, "but the authorization stated both [tests] were random." Plaintiff asserts this violates ADC policy because random urinalyses are supposed to test 10% of the population monthly. He also contends Department Order 709 "clearly states 'only 6 panel rapid tox cups' will be used to conduct urinalysis." He claims this "mandatory language" creates a liberty interest, but Defendants Ryan, Abbl, and Doe used cups with "up to 10 panels." Plaintiff alleges "[e]ach panel represents a new invasion of [his] privacy," the testing violated his Fourteenth Amendment rights, and, as a result, he received disciplinary sanctions, lost good time credits, lost his liberty, and underwent "unreasonable searches of his [his] bodily fluids in violation of D.O. 709."

Plaintiff's claim, if decided in his favor, would either invalidate or imply the invalidity of the deprivation of his good-time credits. Because Plaintiff has not demonstrated that his prison disciplinary proceedings have been reversed, expunged, declared invalid, or called into question by a federal court's issuance of a writ of habeas corpus, his claim is barred by *Heck*. Therefore, the Court will dismiss Count Six.

. . . .

## G. Count Seven

In Count Seven, Plaintiff alleges he was deprived of $4,324 in violation of his Fourteenth Amendment right to due process. He claims he was "falsely accused of criminal charges" in the Superior Court of Pima County, Arizona; the State dismissed the charges; and the trial court ordered the return of his property, but the State claimed $4,324 had been forfeited. Plaintiff contends that although the State was (1) required to "give notice to Plaintiff so he contest the forfeiture" and (2) had Plaintiff's address because "Plaintiff was forced to post bond" in the criminal case, the State intentionally mailed the notice to a "completely different address" and then forfeited his property in absentia and without proper notice. Plaintiff seeks the return of his property.

Under the Eleventh Amendment to the Constitution of the United States, a state or state agency may not be sued in federal court without its consent. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Taylor*, 880 F.2d at 1045. Furthermore, "a state is not a 'person' for purposes of section 1983." *Gilbreath*, 931 F.2d at 1327 (citation omitted). Therefore, the Court will dismiss Defendant State of Arizona and Count Seven.[2]

## IV. Motions for Preliminary Injunctions

To obtain a preliminary injunction, the moving party must show "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). The moving party has the burden of proof on each element of the test.

---

[2] It also appears Plaintiff is incorrect in his allegation that the State intentionally sent the notice to Plaintiff at a "completely different address." In the Application for Order of Forfeiture in *In re U.S. Currency in the Amount of $4,324.00*, Pima County Superior Court case C20142300, the State indicated it had sent the Notice of Pending Forfeiture to Plaintiff on December 2, 2013, via certified mail. *See* http://www.agave.cosc.pima.gov/Agave Partners/GetImage.aspx?ID=19008091 (last visited Nov. 26, 2019). The State attached to the Notice the Certified Mail Receipt, which had been sent to "Nathan Sterling Mason, 3314 E. Flower, Apt. E, Tucson, Arizona 85716-2201"; had a December 6, 2013 delivery date; and appears to bear Plaintiff's signature. *Id.* This address is the same address listed on the November 3, 2013 Bail Bond and Release Order in Plaintiff's criminal case, *State v. Sterling*, Pima County Superior Court case CR20134765. *See* http://www.agave.cosc. pima.gov/AgavePartners/GetImage.aspx?ID=18623261 (last visited Nov. 26, 2019).

*Environmental Council of Sacramento v. Slater*, 184 F. Supp. 2d 1016, 1027 (E.D. Cal. 2000).

### A.     Medical Care

In his August 19, 2019 Motion for Preliminary Injunction, Plaintiff seeks an order requiring Defendant Ryan to "immediately institute a policy and/or issue a demand/directive to Centurion, to treat Plaintiff[']s chronic pain as a serious medical need" and a declaration that "failing to adequately treat Plaintiff's chronic pain without delay[] is a breach of [Defendant Ryan's] duty to provide/delegate adequate healthcare to Plaintiff, and such conduct violates Plaintiff[']s 8th Amendment rights." Plaintiff's August 26, 2019 Motion for Preliminary Injunction (Doc. 7) is identical.

Plaintiff has addressed the elements of the *Winters* test. The Court will require David Shinn, the new ADC Director, to answer Plaintiff's August 19 Motion for Preliminary Injunction. The Court will dismiss as duplicative the August 26 Motion for Preliminary Injunction (Doc. 7).

### B.     Retaliation

In his other August 26, 2019 Motion for Preliminary Injunction (Doc. 8), Plaintiff seeks an order requiring Defendants to "cease all retaliation against him" and "rescind all punishments inflicted on him, resulting from all the[ir] retaliatory actions." Because Plaintiff has failed to address the elements of the *Winters* test, he has failed to meet his burden of proof for a preliminary injunction. Therefore, the Court will deny without prejudice Plaintiff's August 26 Motion for Preliminary Injunction (Doc. 8).

### V.     Motions to File Motion Under Seal

On September 9, 2019 Plaintiff filed a "Motion to File Attached Motion Under Seal For Plaintiff[']s Protection." He requests the Court file "Plaintiff[']s Supplement Evidence to Support Motions for Order of Protection and Other Preliminary Relief Requested" under seal so the Notice of Electronic Filing (NEF) is not sent back to ADC "in its entirety" to "prevent spreading the information via inmate conspirator clerks, or via email forwarded to Defendants or their friends."

On October 7, 2019, Plaintiff filed a "Motion to File Notice to Court Under Seal." He requests his Notice to the Court be filed under seal because it contains privileged information and because ADC is "actively notifying Defendants of accusations against them, thereby putting Plaintiff at further risk of harm by Defendants['] further retaliation." On November 4, 2019, Plaintiff filed a "Motion to File Motion Under Seal," requesting that "Plaintiff[']s Supplement Facts to Pending Motions for Relief" be filed under seal.

The Court, in its discretion, will grant the Motions to File Under Seal and will direct the Clerk of Court to file under seal the lodged documents.[3]

## VI. Request for Expedited Ruling on Requests for Relief

In his Request for Expediting Ruling on Requests for Relief, Plaintiff claims he has not spoken to his attorney since early August, he is in so much pain he can barely move, his ears leak fluid all night, his bowels are paralyzed, he feels "clicking in [his] neck from the last time [he] was assaulted from A.D.C. officers labeling [him] a rat," and he desperately needs help.

As previously discussed, the Court has denied without prejudice the request for a preliminary injunction regarding the retaliation and is ordering David Shinn to answer the request for a preliminary injunction regarding the medical care. Thus, the Court will deny without prejudice Plaintiff's Request for Expedited Ruling.

## VII. Request for Court Order

In his Request for Court Order, Plaintiff seeks an order requiring ADC officials at the Rast Unit to "put in place a system to e-file when needed, and to follow their own policy to deliver NEFs within 48 hours, which CO4 Morris and CO III Mora Refuse to do." He claims he had until October 28, 2019, to file a Notice of Change of Address, but Morris and Mora "refused access to the efile" and told him "that's how it is at Rast, you[']ll just have to tell the courts." He also states that "[l]ibrary is only once a week," it is "impossible

---

[3] To the extent the sealed documents are seeking preliminary injunctive relief, Plaintiff has failed to address the address the elements of the *Winters* test and, therefore, he is not entitled to preliminary injunctive relief.

to e-file anything," and he has not received any court orders or NEFs since October 21, 2019.

First, the Court received Plaintiff's Notice of Change of Address on November 4, 2019. Although it is unclear when Plaintiff submitted the document for filing,[4] the Clerk of Court has filed the document and has updated Plaintiff's address.

Second, although Plaintiff contends it is "impossible to e-file anything," the Court notes that Plaintiff has electronically filed numerous documents in this case, including the Notice of Change of Address, Motion to File Motion Under Seal, and Motion for Court Order, all of which were apparently filed after Plaintiff arrived at the Rast Unit.

Finally, to the extent Plaintiff alleges that he has not received any court orders or NEFs since October 21, 2019, no Court orders or NEFs have been sent to Plaintiff since October 17, when the Clerk of Court sent an NEF regarding Plaintiff's Motion for Expediting Ruling.[5]

Thus, the Court will deny the Request for Court Order.

**VIII.  Warnings**

**A.      Release**

If Plaintiff is released while this case remains pending, and the filing fee has not been paid in full, Plaintiff must, within 30 days of his release, either (1) notify the Court that he intends to pay the unpaid balance of his filing fee within 120 days of his release or (2) file a <u>non</u>-prisoner application to proceed in forma pauperis. Failure to comply may result in dismissal of this action.

**B.      Address Changes**

Plaintiff must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure. Plaintiff must not include a motion for other

---

[4] Under the "prison mailbox rule," a document is deemed "filed" when delivered by the prisoner to a prison official for mailing. *See Houston v. Lack*, 487 U.S. 266, 276 (1988); *Douglas v. Noelle*, 567 F.3d 1103, 1107 (9th Cir. 2009). _

[5] The Clerk of Court also sent NEFs regarding the documents Plaintiff filed on November 4, 2019.

relief with a notice of change of address.  Failure to comply may result in dismissal of this action.

### C.    Copies

Because Plaintiff is currently confined in an Arizona Department of Corrections unit subject to General Order 14-17, Plaintiff is not required to serve Defendants with a copy of every document he files or to submit an additional copy of every filing for use by the Court, as would ordinarily be required by Federal Rule of Civil Procedure 5 and Local Rule of Civil Procedure 5.4.  Plaintiff may comply with Federal Rule of Civil Procedure 5(d) by including, with every document he files, a certificate of service stating that this case is subject to General Order 14-17 and indicating the date the document was delivered to prison officials for filing with the Court.

**If** Plaintiff is transferred to a unit other than one subject to General Order 14-17, he will be required to: (a) serve Defendants, or counsel if an appearance has been entered, a copy of every document that he files, and include a certificate stating that a copy of the filing was served; and (b) submit an additional copy of every filing for use by the Court. *See* Fed. R. Civ. P. 5(a) and (d); LRCiv 5.4.  Failure to comply may result in the filing being stricken without further notice to Plaintiff.

### D.    Possible Dismissal

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order of the Court).

**IT IS ORDERED:**

(1)    Count Two and Counts Five through Eight are **dismissed** without prejudice.

(2)    Defendants McCain, Kaufman, Weiss, Whiting, Wade, Lee, Lombino, State of Arizona, Ducey, Ohshita, ADC Employees Does 1-100, Vance, Garcia, Buckeye City Fire Marshal, Centurion, and Cortez are **dismissed** without prejudice.

. . . .

(3)     The Clerk of Court shall update the docket to reflect that, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Arizona Department of Corrections Director David Shinn is substituted for Charles Ryan **in his official capacity only**.

(4)     The following Defendants must answer the following portions of the First Amended Complaint:

    (a)     Defendant Ryan, in his individual capacity, must answer Count One;

    (b)     Defendant David Shinn, in his official capacity, must answer Count One;

    (c)     Defendant Taylor, in his individual capacity, must answer the portion of Count Three relating to the seizure of evidence and legal mail;

    (d)     Defendant Lowe, in his individual capacity, must answer the portion of Count Three relating to the strip search;

    (e)     Defendant Williams, in his individual capacity, must answer the portion of Count Three relating to his conduct after Plaintiff requested to contact his attorney;

    (f)     Defendants Abbl, Evans, Kila, and Vargas, in their individual capacities, must answer the portion of Count Three relating to the post-settlement events;

    (g)     Defendant Hernandez, in his individual capacity, must answer the portion of Count Three relating to the assault; and

    (h)     Defendant Ende, in his individual capacity, must answer Count Four.

(5)     Within **10 days** of being served with the First Amended Complaint and August 19, 2019 Motion for Preliminary Injunction, David Shinn must file a **response** to the August 19, 2019 Motion for Preliminary Injunction (Doc. 4).  Plaintiff may file a **reply** within **10 days** of Defendant's response.

(6)     Plaintiff's pending motions are resolved as follows:

    (a)     the August 26, 2019 Motions for Preliminary Injunction (Docs. 7 and 8) are **denied without prejudice**;

    (b)     the September 9, 2019 "Motion to File Attached Motion Under Seal for Plaintiff's Protection" (Doc. 13) is **granted**;

    (c)     the October 7, 2019 Motion to File Notice to Court Under Seal (Doc. 21) is **granted**;

(d)     the October 17, 2019 Request for Expedited Ruling on Requests for Relief (Doc. 23) is **denied**;

(e)     the November 4, 2019 Motion to File Motion Under Seal (Doc. 25) is **granted**; and

(f)     the November 4, 2019 Request for Court Order (Doc. 27) is **denied**.

(7)     The Clerk of Court must **file under seal**:

(a)     Plaintiff's Supplement Evidence to Support Motions for Order of Protection and Other Preliminary Relief (lodged at Doc. 14);

(b)     Plaintiff's Notice to the Court (lodged at Doc. 22), and

(c)     Plaintiff's Supplement Facts to Pending Motions for Relief" (lodged at Doc. 26).

(8)     As to **Defendant Shinn**:

(a)     The Clerk of Court must prepare a USM-285 and Summons for David Shinn at 1601 West Jefferson, Phoenix, Arizona, 85007, and must forward these documents and this Order, the First Amended Complaint (Doc. 19), and the August 19, 2019 Motion for Preliminary Injunction (Doc. 4), to the United States Marshal.

(b)     The United States Marshal must **immediately** personally serve a copy of the Summons, First Amended Complaint (Doc. 19), August 19, 2019 Motion for Preliminary Injunction (Doc. 4), and this Order on Defendant Shinn at 1601 West Jefferson, Phoenix, Arizona, 85007.

(9)     As to **Defendants Ryan, Taylor, Williams, Abbl, Lowe, Ende, Evans, Kila, Vargas, and Hernandez**:

(a)     The Clerk of Court must send Plaintiff this Order, and a copy of the Marshal's Process Receipt & Return form (USM-285) and Notice of Lawsuit & Request for Waiver of Service of Summons form for Defendants Ryan, Taylor, Williams, Abbl, Lowe, Ende, Evans, Kila, Vargas, and Hernandez.

(b)     Plaintiff must complete[6] and return the service packet to the Clerk of Court within 21 days of the date of filing of this Order. The United

---

[6] If a Defendant is an officer or employee of the Arizona Department of Corrections, Plaintiff must list the address of the specific institution where the officer or employee works. Service cannot be effected on an officer or employee at the Central Office of the Arizona Department of Corrections unless the officer or employee works there.

States Marshal will not provide service of process if Plaintiff fails to comply with this Order.

(c)     If Plaintiff does not either obtain a waiver of service of the summons or complete service of the Summons, First Amended Complaint, and August 19, 2019 Motion for Preliminary Injunction on a Defendant within 90 days of the filing of the Complaint or within 60 days of the filing of this Order, whichever is later, the action may be dismissed as to each Defendant not served. Fed. R. Civ. P. 4(m); LRCiv 16.2(b)(2)(B)(ii).

(d)     The United States Marshal must retain the Summons, a copy of the First Amended Complaint, a copy of the August 19, 2019 Motion for Preliminary Injunction, and a copy of this Order for future use.

(e)     The United States Marshal must notify Defendants of the commencement of this action and request waiver of service of the summons pursuant to Rule 4(d) of the Federal Rules of Civil Procedure. The notice to Defendants must include a copy of this Order.

(f)     A Defendant who agrees to waive service of the Summons and First Amended Complaint must return the signed waiver forms to the United States Marshal, not the Plaintiff, **within 30 days of the date of the notice and request for waiver of service** pursuant to Federal Rule of Civil Procedure 4(d)(1)(F) to avoid being charged the cost of personal service.

(g)     The Marshal must immediately file signed waivers of service of the summons. If a waiver of service of summons is returned as undeliverable or is not returned by a Defendant within 30 days from the date the request for waiver was sent by the Marshal, the Marshal must:

(1)     personally serve copies of the Summons, First Amended Complaint, August 19, 2019 Motion for Preliminary Injunction, and this Order upon Defendant pursuant to Rule 4(e)(2) of the Federal Rules of Civil Procedure; and

(2)     within 10 days after personal service is effected, file the return of service for Defendant, along with evidence of the attempt to secure a waiver of service of the summons and of the costs subsequently incurred in effecting service upon Defendant. The costs of service must be enumerated on the return of service form (USM-285) and must include the costs incurred by the Marshal for photocopying additional copies of the Summons, First Amended Complaint, August 19, 2019 Motion for Preliminary Injunction, or this Order and for preparing new

process receipt and return forms (USM-285), if required. Costs of service will be taxed against the personally served Defendant pursuant to Rule 4(d)(2) of the Federal Rules of Civil Procedure, unless otherwise ordered by the Court.

(10)     Defendants must answer the relevant portions of the First Amended Complaint or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

(11)     Any answer or response must state the specific Defendant by name on whose behalf it is filed.  The Court may strike any answer, response, or other motion or paper that does not identify the specific Defendant by name on whose behalf it is filed.

(12)     This matter is referred to Magistrate Judge Michelle H. Burns pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure for all pretrial proceedings as authorized under 28 U.S.C. § 636(b)(1).

Dated this 30th day of December, 2019.


David G. Campbell
Senior United States District Judge